**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 9:18-CR-80006-ROSENBERG**

UNITED STATES OF AMERICA,

v.

DARREN SCOTT PITNICK,

    Defendant.

_____/

**ORDER DENYING WITHOUT PREJUDICE**
**MOTION FOR COMPASSIONATE RELEASE**

This cause is before the Court upon Defendant Darren Scott Pitnick's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i). DE 54. The Court has carefully reviewed the Motion, the Government's Response (DE 59), Defendant's Reply (DE 60), and the record. The Court has also considered the Government's filing of a victim's statement in opposition to compassionate release. DE 61. Being fully advised in the premises, the Court denies the Motion without prejudice.

On June 26, 2018, the Court sentenced Pitnick to a 78-month term of imprisonment for receipt and possession of material involving sexual exploitation of minors. *See* DE 47. Once a sentence of imprisonment is imposed, a court's authority to modify the sentence is narrowly limited by statute. *United States v. Phillips*, 597 F.3d 1190, 1194–95 (11th Cir. 2010). Under § 3582(c)(1)(A), a court may modify a term of imprisonment

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the

lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

18 U.S.C. § 3582(c)(1)(A). The court may reduce the term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* In making the decision whether to reduce the term of imprisonment, the court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable. *Id.*

Application note 1 to U.S.S.G. § 1B1.13 provides a list of circumstances in which "extraordinary and compelling reasons" warranting a sentence reduction may exist. *See* U.S.S.G. § 1B1.13 (policy statement), application note 1. One such circumstance is where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* § 1B1.13, application note 1(A)(ii). Extraordinary and compelling reasons may also exist if, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described" in the application note. *Id.* § 1B1.13, application note 1(D).

Pitnick is confined at FCI Miami, a low-security facility in Miami, Florida. Pitnick's parents first submitted a request for compassionate release to the warden of FCI Miami, and more than 30 days elapsed thereafter. *See* 18 U.S.C. § 3582(c)(1)(A). The Government concedes that Pitnick's administrative remedies are exhausted. DE 59 at 11. Accordingly, the Court considers Pitnick's request on its merits and concludes that a reduction in sentence is inappropriate in this case.

2

FCI Miami has experienced a recent spike in COVID-19 infections among both inmates and staff. As of August 4, 2020, there were 95 active cases among inmates and 24 cases among staff.[1] As is the case with most prisons, social distancing is often difficult or impossible, which puts inmates at increased risk of contracting COVID-19. Pitnick argues that because he is 46 years old, suffers from Parkinson's Disease ("PD"),[2] and is housed at a facility experiencing a COVID-19 outbreak, "extraordinary and compelling" reasons warrant a sentence reduction.

The latest CDC guidance does not expressly deem PD a risk factor, although it states that "neurologic conditions such as dementia ***may*** increase your risk of severe illness from COVID-19."[3] The American Parkinson Disease Association ("APDA") states that PD-specific data is scarce:

> It is very clear from the data emerging from the ongoing pandemic that the risk of complications from COVID-19 rises steeply with age and with co-morbid medical conditions such as diabetes, heart disease and lung problems. We do not have similar data yet for people with PD. Although some small studies have been conducted that probe the relationship between COVID-19 and PD, there is much more information that we need to learn.[4]

However, the APDA identifies certain interactions between PD and respiratory illness in general, including the potential for restrictive lung disease based on muscular problems with the chest wall and trunk, as well as potential dysfunction of swallow and difficulty clearing airway secretions. *Id.* The relative lack of empirical data related to COVID-19 and those with PD,

---

[1] [1] *COVID-19*, BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last accessed August 4, 2020).
[2] The Motion also references Pitnick's high cholesterol but does not argue that he has a "serious heart condition" recognized by the CDC as increasing the risk of COVID-19 complications. *People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed August 4, 2020) (emphasis added).
[3] CTRS. FOR DISEASE CONTROL & PREVENTION, *supra* note 2 (emphasis added).
[4] *Coronavirus Disease 2019 and the PD Community*, AM. PARKINSON DISEASE ASS'N, https://www.apdaparkinson.org/article/covid-19-overview-for-pd-community/ (updated June 15, 2020).

3

particularly younger individuals such as Pitnick, preclude any categorical conclusions about PD and COVID-19.

According to the affidavit of Pitnick's parents, the prison frequently runs out of Pitnick's medication, and the COVID-19 lockdown at FCI Miami prevents Pitnick from exercising, which is important for those with PD to maintain mobility. In response to these concerns, the undersigned contacted officials at FCI Miami to learn more about the situation, speaking first with Warden Sylvester Jenkins and then with both Clinical Director Dr. Inerio Alarcon and Unit Manager Stephanie Wyatt. The Warden represented that on July 6, 2020, the facility entered a 21-day lockdown in an attempt to stymie the outbreak. Although the incidence among inmates has remained steady during the lockdown, the incidence among staff members has risen. The lockdown was extended another week, until August 3, 2020, and there may or may not be further extensions. During the lockdown, inmates are not able to participate in recreation, but they are allowed to leave their units for access to the phone, email, and shower facilities. Recreation will resume once the lockdown concludes.

Dr. Alarcon and Manager Wyatt represented that Pitnick's medical condition is stable, his temperature is taken every day, and he receives his medication daily. Although Pitnick's assigned cell is small, it is temporary and will change as the outbreak is controlled. They further report that the prison has otherwise adhered to all recommendations following Pitnick's appointment with a neurology specialist on January 17, that Pitnick's symptoms are mild, and that therapy is not immediately needed.

The Court is sympathetic to the challenging circumstances Pitnick faces in managing PD while incarcerated. And the Court understands that he has legitimate concerns about the spread of

4

COVID-19 at FCI Miami. However, the Court must view those concerns in conjunction with the facts as best the Court is able to ascertain them. Those facts are that Pitnick is relatively young, there is uncertainty as to whether and to what extent those with PD are at special risk from COVID-19 complications, and Pitnick's PD symptoms remained controlled. Although the Court recognizes that the current state of lockdown is not conducive to Pitnick's health in the long run, the lockdown is temporary. Accordingly, the Court does not find that extraordinary and compelling circumstances warrant a sentence reduction at this time. However, the Court disagrees with the Government that denying the Motion with prejudice is appropriate, and therefore Pitnick is not precluded from seeking appropriate relief to the extent that his health or conditions at FCI Miami meaningfully shift.

For these reasons, it is **ORDERED AND ADJUDGED** that Pitnick's Motion for Compassionate Release [DE 54] is **DENIED WITHOUT PREJUDICE**.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 5th day of August, 2020.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: Defendant, Counsel of Record